UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| WILLIAM BONNER, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | Civil Action No. SA-10-CV-937-XR |
| | § | |
| METROPOLITAN SECURITY SERVICES, INC., | § | |
| | § | |
| *Defendant*. | § | |

**ORDER**

Plaintiff was formerly employed by Metropolitan Security Services, Inc. d/b/a Walden Security (hereinafter Walden Security) as a security officer and was assigned to provide security services at Fort Sam Houston.[1] All parties agree that this position is a non-exempt position pursuant to the Fair Labor Standards Act (FLSA). Defendant was paid an hourly rate and was also paid an additional $3.42 per hour for health and wellness benefits. He complains that this additional amount was not included in the calculation of his overtime rate of pay.[2] In addition, Plaintiff alleges that security officers were not relieved of all their job duties while on their meal break.[3] Accordingly,

---

[1] Walden Security contracted with the Department of the Army to control personnel and vehicle access into Fort Sam Houston.

[2] It is undisputed that Walden Security did not include the cash payments in lieu of fringe benefits in Plaintiff's regular rate of pay when calculating his overtime compensation.

[3] Plaintiff alleges that security officers "were required to maintain vigilance, meaning that I had to remain alert to my surroundings, listen to radio contact, and if necessary, respond to radio contact. Until the last few months of my employment, Walden prohibited reading materials or listening to the radio or music using headphones, which might interfere with the requirement to remaining vigilant. I was required to remain armed during breaks, which meant that I had to exhibit the heightened degree of awareness that comes with carrying a weapon. This meant that

he argues that he should have been paid for this thirty minute period per work day because this was not a bona fide meal period.[4]  It appears Plaintiff also complains that the omission of the thirty minutes per work day may have also affected whether he worked over forty hours during certain weeks.[5]

## Defendant's Motion for Judgment on the Pleadings

Defendant argues, that as a matter of law, Plaintiff cannot state a valid claim because the exclusion of the additional $3.42 per hour from the overtime calculation rate is expressly permitted under the FLSA.

Both parties agree that Walden Security's pay obligations under this Army contract are governed by the McNamara-O'Hara Service Contract Act of 1965 ("Service Contract Act" or "SCA"), 41 U.S.C.A. §§ 351, et. seq.  Both parties also agree that a security officer is a "service

---

sleep or even much relaxation during breaks was not possible.  I generally could not leave the guard shack to which I was assigned during the break.  At times, a situation would arise during a break that would require my attention, such as assisting a co-worker with a rude or dangerous individual at the gate.  Other times, traffic at the gate might back up and I would be required to assist with clearing it, even if this occurred during my break. " In further support of his claim, Plaintiff has provided the Court with an excerpt from a Security Forces Standard Operating Procedure which states, in part, that "personnel on break will remain alert and monitor the situation at the ACP and be prepared to assist other ACP personnel, as necessary."

[4] 29 C.F.R. § 785.19(a).

[5] Defendant argues that security officers are completely relieved of and from all duties for a thirty minute meal break, are not automatically deducted thirty minutes from their work period, are not required to "maintain vigilance" during the meal break, nor are they required to perform any vehicle or personnel control during the meal break.  Defendant further argues that security officers were required to sign in and sign out for each daily meal break and that the security officers were instructed that in the event that they did not receive an uninterrupted thirty minute meal break, they were to note that fact on their sign in sheet in order to be properly compensated.  Defendant also argues that the SOP relied upon by Plaintiff applies to paid breaks, not unpaid lunch breaks.


employee" as that term is defined in the Service Contract Act.

Section 351(a)(2) of the Service Contract Act requires that

> service employees ... be provided ... prospective fringe benefits increases.... Such fringe benefits shall include medical or hospital care, pensions on retirement or death, compensation for injuries or illness resulting from occupational activity, or insurance to provide any of the foregoing, unemployment benefits, life insurance, disability and sickness insurance, accident insurance, vacation and holiday pay, costs of apprenticeship or other similar programs and other bona fide fringe benefits not otherwise required by Federal, State, or local law to be provided by the contractor or subcontractor. The obligation under this subparagraph may be discharged by furnishing any equivalent combinations of fringe benefits or by making equivalent or differential payments in cash under rules and regulations established by the Secretary.

Walden Security provided "equivalent or differential payments in cash" in lieu of the statutorily required benefits.

Under the FLSA, "Except as otherwise provided ..., no employer shall employ any of his employees ..., for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C.A. § 207(a)(1). The "regular rate" is defined in section 207(e).[6]

---

[6]As used in this section the "regular rate" at which an employee is employed shall be deemed to include all remuneration for employment paid to, or on behalf of, the employee, but shall not be deemed to include--
(1) sums paid as gifts; ...;
(2) payments made for occasional periods when no work is performed due to vacation, holiday, illness, ...;
(3) Sums paid in recognition of services performed ...;
(4) contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees;
(5) extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a

In relevant part, the SCA states: "In determining any overtime pay to which such service employees are entitled under any Federal law, the regular or basic hourly rate of pay of such an employee shall not include any fringe benefit payments computed hereunder which are excluded from the regular rate under the Fair Labor Standards Act [29 U.S.C.A. § 201 et seq.] by provisions of section 7(d) thereof [29 U.S.C.A. § 207(d)]."[7]

The Department of Labor has promulgated interpretations of the SCA[8], which generally should be afforded deference by courts pursuant to *Skidmore v. Swift & Co.*, 323 U.S. 134 (1944).

29 C.F.R. § 4.177(e) states:

> Section 6 of the [SCA] excludes from the regular or basic hourly rate of an employee, for purposes of determining the overtime pay to which the employee is entitled under any other Federal law, those fringe benefit payments computed under the Act which are excluded from the regular rate under the Fair Labor Standards Act by provisions of section 7(e) (formerly designated as section 7(d) ) of that Act (29 U.S.C. 207(e) ). Fringe benefit payments which qualify for such exclusion are described in subpart C of Regulations, 29 CFR part 778. When such fringe benefits are required to be furnished to service employees engaged in

---

day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours or regular working hours, as the case may be;
(6) extra compensation provided by a premium rate paid for work by the employee on Saturdays, Sundays, holidays, or regular days of rest, or on the sixth or seventh day of the workweek, where such premium rate is not less than one and one-half times the rate established in good faith for like work performed in non-overtime hours on other days;
(7) extra compensation provided by a premium rate paid to the employee, in pursuance of an applicable employment contract or collective-bargaining agreement ...; or
(8) any value or income derived from employer-provided grants or rights provided pursuant to a stock option, stock appreciation right, or bona fide employee stock purchase program...."

[7]Section 207(d) was repealed and it is recognized by all that the reference is now to section 207(e).

[8]See 29 C.F.R. §§ 4.101, et seq.

>contract performance, the right to compute overtime pay in accordance with the above rule is not lost to a contractor or subcontractor because it discharges its obligation under this Act to furnish such fringe benefits through alternative equivalents as provided in this section. If it furnishes equivalent benefits or makes cash payments, or both, to such an employee as authorized herein, the amounts thereof, which discharge the employer's obligation to furnish such specified fringe benefits, may be excluded pursuant to this Act from the employee's regular or basic rate of pay in computing any overtime pay due the employee under any other Federal law. No such exclusion can operate, however, to reduce an employee's regular or basic rate of pay below the monetary wage rate specified as the applicable minimum wage rates under sections 2(a)(1), 2(b), or 4(c) of this Act or under other law or an employment contract.

Plaintiff argues that 29 C.F.R. § 4.177(e) and 29 C.F.R. Part 778, which provide that cash payments made by an employer in lieu of fringe benefits are excludable from the regular rate, "conflict with the plain language of the statutes they purport to interpret and are therefore arbitrary and capricious." Accordingly, Plaintiff argues that these regulations should not be afforded any *Skidmore* deference.

Plaintiff argues that § 355 of the SCA states: "In determining any overtime pay to which such service employees are entitled under any Federal law, the regular or basic hourly rate of pay of such an employee shall not include any fringe benefit payments computed hereunder which are excluded from the regular rate under the Fair Labor Standards Act [29 U.S.C.A. § 201 et seq.] by provisions of section 7(d) thereof [29 U.S.C.A. § 207(d)]." Turning then to section 207(d) [now 207(e)], Plaintiff argues that cash payments made by an employer in lieu of fringe benefits are not found in section 207(e). The only subpart that comes close to addressing cash payments is subpart (4), which excludes: "contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement, life, accident, or health insurance or similar benefits for employees." Plaintiff argues that it is uncontroverted that the

5

cash payments at issue were not made by the employer to any trustee or third person.

This Court agrees that 29 C.F.R. § 4.177(e) and 29 C.F.R. Part 778 are inconsistent with §355 of the SCA and §207(e) of the FLSA.  "Exemptions from or exceptions to the [FLSA's] requirements are to be narrowly construed against the employer asserting them."  *Donovan v. Brown Equipment and Service Tools, Inc.*, 666 F.2d 148, 153 (5th Cir. 1982); *Madison v. Resources for Human Development, Inc.*, 233 F.3d 175, 187 (3rd Cir. 2000).  Although the Defendant here has correctly cited and relied upon 29 C.F.R. § 4.177(e) for its calculation of the "regular rate", the Department of Labor regulations are not supported by the plain language of the SCA and FLSA.[9]  *See also Local 246 Utility Workers Union of America v. Southern California Edison Co.*, 83 F.3d 292, 296 (9th Cir. 1996) ("there is no indication that any of the supplemental payments to the employees consisted of contributions made by Edison irrevocably to a trust. Section 207(e)(4) deals with contributions by the employer, not payments to the employee. If the employer meets the requirements of section 207(e)(4) in making irrevocable contributions to a trust, then those contributions will not be added to the regular pay rate").  Indeed, in the regulations adopted for section 207(e)(4) of the FLSA, 29 C.F.R. § 778.215, the DOL states: "The primary purpose of the [exclusion of benefit-plan contributions under section 7(e)(4)] must be to provide systematically for the payment of benefits to employees on account of death, disability, advanced age, retirement, illness, medical expenses, hospitalization, and the like." The provision of cash payments directly to an employee, with no accountability that those payments will be used for health insurance or like benefits, does not meet "the primary purpose"

---

[9] *See Barnes v. Akal Sec., Inc.*, 2005 WL 1459112 (D. Kan. 2005).  Although *Barnes* was decided in the context of determining whether amending a complaint to add a FLSA claim was futile, the reasoning stated in that Memorandum and Order is persuasive.

of section 207(e)(4).

> Defendant argues that
>
>> the SCA states that 'the regular rate or basic hourly rate of pay of ... an employee shall not include any fringe benefit payments computed hereunder which are excluded from the regular rate under the [FLSA].' Although this language addresses fringe benefit payments, Plaintiff contends it unambiguously requires that cash payments be included in employees' regular rates since cash payments are not expressly excluded under the FLSA. This interpretation of the SCA is, at best, strained because it assumes that the term fringe benefit payments encompasses cash payments.

Defendant's argument is misplaced. Defendant bears the burden of establishing any FLSA exemptions and it also carries the burden of establishing that the SCA and FLSA explicitly authorize it to not include its cash payments in the calculation of the regular rate. *See Vela v. City of Houston*, 276 F.3d 659, 666-67 (5th Cir. 2001). The Defendant may not rely upon 29 C.F.R. § 778.215. The DOL has construed the SCA in a manner not authorized by the SCA's reference to the FLSA, and the DOL's regulation is accordingly not entitled to *Skidmore* deference.[10]

Defendant's Motion for Judgment on the Pleading (doc. no. 21) is denied.

---

[10]*Contra Phelps v. Parsons Technical Support, Inc.*, 2010 WL 4386920 (S.D. Ind. 2010) ("Plaintiffs acknowledge that the DOL regulations assert 'that cash paid in lieu of SCA mandated benefits are excluded from the regular rate.' [Dkt. 120 at 2.] Plaintiffs ask the Court to ignore the DOL regulations, however, because they contend that the regulations are 'contrary to the plain language of the [SCA and FLSA] statutes[,]' and 'improperly ask this Court to engraft an additional exclusion in [29 U.S.C. § 207(e) ] of the FLSA statute not specifically enumerated by Congress.' [Dkt. 120 at 2, 7.] The Court has already concluded that 41 U.S.C. § 355 is silent or ambiguous regarding the issue presented, and Plaintiffs do not argue that the DOL's interpretation is arbitrary and capricious. Therefore, under the circumstances of this case and in light of the cited portions of the DOL regulations, the Court concludes as a matter of law that Parsons' cash payments made in lieu of fringe benefits pursuant to the SCA were excludable from the Plaintiffs' regular rate for purposes of calculating overtime.").

**Plaintiff's Motion for Conditional Certification**

Plaintiff and approximately 18 other security officers request that this Court certify a class of all current or former hourly paid security officers employed by Walden Security assigned to work at Fort Sam Houston at any time during the three year period immediately preceding the filing of this suit.

Defendant opposes the motion arguing that the exclusion of the additional $3.42 per hour from the overtime calculation rate is expressly permitted under the FLSA. As stated above, the Court disagrees with Defendant's argument. Secondly, Defendant argues that Plaintiff is not similarly situated and each security officer's case will be different because they each signed in and out for their meal breaks.

29 U.S.C. § 216 permits an employee to bring an action against an employer "[on] behalf of himself ... and other employees similarly situated." 29 U.S.C.A. § 216(b). Unlike a Rule 23 class action, in which plaintiffs "opt out" of the class, a § 216 plaintiff must "opt in" to become part of the class. Accordingly, the method adopted by this Court for determining whether to certify a collective action under § 216(b) - the *Lusardi* two-tiered approach[11] - involves a preliminary decision regarding notice to putative class members. In the first stage, called the notice stage, the District Court must make an initial determination whether notice of the action should be sent to potential class members.[12] This determination is based solely on the pleadings and affidavits and the standard is a lenient one, typically resulting in conditional certification of a

---

[11]*See Neagley v. Atascosa County EMS*, 2005 WL 354085, at *3 (W.D. Tex. Jan. 7, 2005); *see also Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 359 (D. N.J. 1987).

[12]*Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213-14 (5th Cir.1995).

representative class to whom notice is sent and who receive an opportunity to opt in.

Once conditional certification is granted, the case proceeds through discovery as a representative action.[13]  Upon completion of discovery, the defendant will typically file a motion for decertification.  At this second stage of the analysis, the District Court should make a factual determination as to whether the putative class members are similarly situated.  If so, then the representative action may proceed; if not, then the class should be decertified, the opt-in plaintiffs dismissed, and the class representatives should be allowed to proceed on their individual claims.[14]

As stated above, a similar legal issue impacts all the security officers.  In addition, a common fact issue exists as to whether security guards were required to maintain vigilance during their meal break.  Evidence of similar job duties and of a single policy which violates the FLSA has been held to be sufficient to conditionally certify a class.  It is clear from the pleadings, the affidavits, and the additional parties that have already opted in that conditional certification is appropriate.

Plaintiff's Motion for Conditional Certification (doc. no 17) is granted.

Defendant complains about the proposed notice Plaintiff desires to utilize.  The Court does note that the proposed notice fails to inform an employee that he or she may retain their own attorney should they so desire.  Defendant complains that the notice should be restricted to the two-year limitations period because there is no evidence of willfulness to allow for the three-year

---

[13] *Mooney*, 54 F.3d at 1214.

[14] *Id.*; *see also Johnson v. TGF Precision Haircutters, Inc.*, 319 F.Supp.2d 753, 754-55 (S.D. Tex. 2004).

limitations period. Although Defendant is correct that its reliance upon 29 C.F.R. § 4.177(e) may entitle it to only be subject to the two-year time period, at this time the Court is faced with a fact issue as to whether the bona fide meal period was violated, and whether any such violation was willful. Defendant also argues that in determining when an action is commenced for those opting in, it should be considered to be commenced on the date when the opt in plaintiff files his written consent to become a party plaintiff. The Court agrees with this restatement of 29 U.S.C. § 256. Defendant also claims that the notice is "fraught with other issues" and requests that the parties be permitted ten days to file an amended agreed upon notice.

The parties are ordered to provide the court with a revised agreed upon notice (if possible) within ten days of this Order. If agreement is not reached, both parties are to submit their version of a notice within ten days of this Order.

## Conclusion

Plaintiff's Motion for Conditional Certification (doc. no 17) is granted. Defendant's Motion for Judgment on the Pleading (doc. no. 21) is denied. The parties are ordered to provide the court with a revised agreed upon notice (if possible) within ten days of this Order. If agreement is not reached, both parties are to submit their version of a notice within ten days of this Order.

It is so ORDERED.

SIGNED this 15th day of March, 2011.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE